VALENTINE THOMAS AND ANOTHER, APPELLANTS, *v.* FREDERICK K. MORRIS, RESPONDENT.

JUDGMENT. —VACATING. — EXCUSABLE NEGLECT. —Where the real defendant and his counsel were absent, caused by excusable neglect and misunderstanding between counsel, and a judgment was given and entered against the defendant, and application to vacate the judgment was made within thirty days after its rendition; *held* that the court did not abuse its discretion in granting an order vacating the judgment upon terms.

ID.—ID.—ID.— REMEDY.—The remedy for a party against whom judgment is taken through his inadvertence is not by motion for a new trial, but by application to set aside and vacate the judgment under the statute permitting the court to relieve a party from a judgment or order taken against him through his mistake, inadvertence or excusable neglect.

ID.—ID.— SUBSTITUTION OF NEW PARTY. — ABATEMENT. —Where another party has succeeded to the interest of the defendant, but has not been substituted on the record or his attorneys appeared, and judgment is taken against the original defendant, the real defendant who has succeeded to the nominal defendant's rights may apply to set the judgment aside, because the suit does not abate.

NEW TRIAL.— RELIEF AGAINST JUDGMENT.— INADVERTENCE.—The remedy where a judgment has been taken through excusable

neglect against a defendant is not by a motion for a new trial, which applies only where the aggrieved party was present at the trial, but by motion to vacate the judgment.

APPEAL from an order vacating a judgment of the district court of the first district. The opinion states the facts.

*Mr. M. M. Kellogg* and *Mr. E. E. Corfman,* for the appellants.

*Mr. W. H. Dickson,* and *Messrs. Marshall and Royle,* for the respondent.

ANDERSON, J.:

The defendant, F. K. Morris, as trustee of the Gladstone Mining Company, made application in the United States land office, at Salt Lake City, for a patent for a mining claim called the "Michigan Lode," situated in Juab county, in this Territory. The plaintiffs, as the alleged owners of a mining claim, called the "Almo Lode," which conflicted with a part of the Michigan Lode, filed an adverse claim in the land office, and on the 2d day of April, 1888, began this action for the purpose of determining the right of possession of the ground in controversy, under the provisions of § 2326, Rev. St. U. S. The defendant filed his answer to the complaint on the 7th day of April, 1888, Bennett, Kirkpatrick & Bradley being his attorneys. The cause was continued from term to term, until the September term, 1891, when, in the absence of the defendant and his attorneys, it was set for trial on the 14th day of December, 1891, on which day it was tried in the absence of the defendant and his counsel, M. M. Kellogg appearing for plaintiffs, and a verdict and judgment were rendered in favor of the plaintiffs. On the 31st day of December, 1891, Marshall & Royle and Dickson & Stone entered their appearance for defendant, and procured a stay of proceedings in the case for a period

of ten days. On the 8th day of January, 1892, counsel. for the respective parties appeared in court, and counsel for defendant filed a motion to set aside and vacate the judgment and decree which had been entered in favor of the plaintiffs. This motion was supported by the affidavits of W. H. Dickson, Thomas Marshall, J. C. Royle, and A. E. Hyde. The affidavit of W. H. Dickson was to the effect that, for more than one year prior to the filing of said motion, Thomas Marshall and J. C. Royle, of the firm of Marshall & Royle, and Arthur Brown, and W. H. Dickson and M. N. Stone, of the firm of Dickson & Stone, had been and still were the only attorneys of the Bullion-Beck and Champion Mining Company. That at the time this action was begun the said Arthur Brown was the attorney of plaintiffs in said action. That thereafter, and long prior to the 14th day of December, 1891, Brown was retained by the year by the Bullion-Beck and Champion Mining Company as one of its attorneys, and is still so maintained; and that after he was so retained, and prior to December 14, 1891, he withdrew from said cause as attorney for plaintiffs, and was incapacitated to act as attorney for either plaintiffs or defendant, in the further progress of the case; and that M. M. Kellogg was substituted as the attorney for the plaintiffs. That after the complaint and answer in this action had been filed the defendant transferred all his right, title, and interest in and to the Michigan Lode to the Bullion-Beck and Champion Mining Company, which company still owns the same. That the firms of Marshall & Royle and Dickson & Stone were not substituted of record as attorneys for the defendant in the place of Bennett, Kirkpatrick & Bradley until December 31, 1891. That the trial of the case on the 14th day of December, 1891, was had in the absence of the defendant and his counsel. That his partner, M. N. Stone, had been absent continuously since January, 1891, on account of ill health, and was still absent, and unable to

attend to business. That affiant was engaged in the trial of a case of great importance in the third district court from the 7th to the 19th day of December, 1891, and did not learn that this case was set for trial on the 14th day of December, 1891, until the afternoon of the 11th day of said month, and that it was then impossible for him to abandon the trial of the cause in which he was engaged. That upon learning the day on which the case was to be tried, he went immediately to the said Arthur Brown, and requested him to attend to the case, and was informed by Brown that he could not do so on account of having at one time been attorney for plaintiffs in the action, but that a continuance could be obtained; and that he understood Brown to say he would attend to getting a continuance of the case by stipulation of counsel. That believing such continuance would be obtained, and owing to pressure of business in the trial in which he was then engaged, the fact of this case having been set for December 14th entirely escaped his attention until some days after the judgment and decree therein had been entered. The affidavit of Thomas Marshall showed that he was a member of the firm of Marshall & Royle, and that he had been one of the attorneys for the Bullion-Beck and Champion Mining Company for more than a year. That from the 7th until after the 14th day of December, 1891, he was in ill health, and unable to attend to any business, and that he had no notice or information that the case was set for trial on the 14th day of December, 1891, until several days after said date. The affidavit of J. C. Royle, of the firm of Marshall & Royle, showed that he was one of the attorneys of the Bullion-Beck and Champion Mining Company. That from the 7th to the 19th day of December, 1891, he was engaged in the third district court, at Salt Lake City, in the trial of a case of great importance, which it would have been impossible for him to abandon; and that he had no notice or information

whatever of the setting of this case until some days after the 14th day of December, 1891. The affidavit of A. E. Hyde showed that for more than a year prior to the trial of said case he had been one of the directors and the general manager of the Bullion-Beck and Champion Mining Company, and has a general charge of the business of that corporation. That the defendant, F. K. Morris, trustee for the Gladstone Mining Company, was the owner and in possession of the Michigan Lode for a long time prior to the beginning of this action, and down to the month of May, 1889, when all his right, title, and interest, and that of the Gladstone Mining Company, to said Michigan Lode was transferred to the said Bullion-Beck and Champion Mining Company, which last company has been the owner and in possession thereof ever since. That said lode was duly located long prior to the location of the said Almo Lode, and that more than $100 has been expended annually on said Michigan Lode since its location. That it was the intention of the said Bullion-Beck and Champion Mining Company in good faith to defend this action in the name of the original defendant therein, not deeming it necessary to be substituted as defendant after it acquired the property in controversy. That neither the affiant nor the company had any notice or information that this action had been set for hearing on the 14th day of December, 1891, until the 11th day of December, 1891, when he learned the fact from an item in a newspaper. That he immediately went to see Mr. W. H. Dickson, one of the company's attorneys, who told affiant that he was engaged in the trial of a very important case in the third district court, and could not attend to the trial of this case on the 14th day of December, but would see Arthur Brown or Thomas Marshall, who were also attorneys for the Bullion-Beck and Champion Mining Company, and would have the matter properly attended to. There was also a stipulation signed by M. M. Kellogg, attorney for

the plaintiffs, and Dickson & Stone, attorneys for defendant, that Bennett, Marshall & Bradley, attorneys of record for defendant, had actual notice on the 10th day of December that the case was set for trial on the 14th day of that month, and that the real parties in interest also had actual notice on the 10th day of December of the time when the case was to be tried. Upon the motion, affidavits, and stipulation the court ordered that the judgment be set aside, and a new trial be had, upon the defendant paying all costs to date of order and an attorney's fee of $200; to which order the plaintiffs excepted, and bring this appeal to have the same reversed. The errors assigned are: "(1) That the notice and motion of defendant herein did not ask the court to set aside the verdict of the jury, nor for a new trial. (2) That neither the defendant of record, nor the attorneys of record, have asked that this judgment and decree be set aside, and have not complained that it is unjust, and no reason is attempted to be shown why they do not. (3) That a notice of intention to move for a new trial must be given within ten days after a verdict of a jury, and no such notice was given or filed. (4) That the affidavits are not sufficient to allow the judicial discretion of the court to vacate and set aside the judgment and decree."

Counsel for plaintiffs contend that the court erred in ordering a new trial, because the notice and motion did not ask the court to set aside the verdict of the jury, nor for a new trial; and that in order to authorize the court to grant a new trial, notice of intention to move for a new trial must be given within ten days after the verdict is rendered, as provided in § 3402, Comp. Laws 1888; and that no such notice was given or filed. Section 3256, Comp. Laws 1888, provides that: "The court may, * * * upon such terms as may be just, relieve a party, or legal representative, from a judgment, order,

19

or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; and when, for any reason satisfactory to the court, or the judge thereof, the party aggrieved has failed to apply for the relief sought during the term at which such judgment, order, or proceeding complained of was taken, the court, or the judge thereof in vacation, may grant the relief upon the application made within a reasonable time, not exceeding six months after the adjournment of the term." The application to set aside the judgment and decree was made under this section, and in less than thirty days after the judgment and decree were rendered. It could have been made at any time during the term, or, for reasons satisfactory to the court or judge, it could have been made any time within six months after the close of the term.

We do not think that § 3402 applies to a case of this kind, for, by that section, notice of intention to move for a new trial must be made within ten days after verdict, and contemplates a case where the party is present at the trial, either in person or by counsel, and is aggrieved by reason of something which occurred in the course of the trial, or by the verdict or judgment rendered in the case, or has discovered material evidence after the trial which he could not, with reasonable diligence, have discovered and produced at the trial; while § 2356 contemplates a case where relief is applied for on grounds differing materially from those mentioned in § 3402.

It is true the application did not ask that the verdict be set aside, nor that a new trial be granted, but only that the judgment and decree be set aside, but the effect of setting aside the judgment and decree would be to require a new trial before another judgment and decree could be made in the case. In Freem. Judgm. § 105, it is said: "But if they were not at the trial, or were not represented there, on account of some mistake or excusa-

ble neglect, then their remedy is not by application for a new trial, but by an application addressed to the discretion of the court, and made under the statute authorizing relief to be granted from judgments rendered against a party through his mistake, inadvertence, or excusable neglect."

It is contended that, inasmuch as neither the defendant of record, nor the original attorneys of record, have asked that the judgment and decree be set aside, nor have complained that they are unjust, the court had no authority to set them aside upon the application of strangers to the record. Section 3187, Comp. Laws 1888, provides that an action or proceeding does not abate by the transfer of any interest therein; but the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding. No substitution of the real defendant·in interest —the Bullion-Beck and Champion Mining Company—was made after the transfer to it of the property in controversy, in May, 1889, and the case was allowed to proceed in the name of the original defendant. But from the time of this transfer, the original defendant became only a nominal party, and had no interest in the result of the case, and Bennett, Kirkpatrick & Bradley, who were his attorneys of record, but who are not shown to be, nor to have been at any time, attorneys for the Bullion-Beck and Champion Mining Company, had no further interest in the defense of the action; so that an application to set aside the judgment and decree by Morris, as trustee, or by his attorney, was not necessary. But the grantee of Morris had the right to move to set aside the judgment and decree, as they affected it, and not Morris. *Plummer* v. *Brown,* 64 Cal. 429, 1 Pac. Rep. 703; *Insurance Co.* v. *Aldrich,* 38 Wis. 107; 1 Black, Judgm. §§ 316, 343; *Ladd* v. *Stevenson,* 112 N. Y. 325, 19 N. E. Rep. 842.

But it is contended that the affidavits filed did not justify the action of the court, and that the court abused its discretion in setting aside the judgment and decree. The statute is very broad, and under it the granting or refusing of an application to set aside a judgment taken by default or rendered upon a hearing in the absence of one of the parties, through "his mistake, inadvertence, surprise, or excusable neglect," is, by the express terms of the statute, vested in the court, and its action will not be disturbed on appeal, unless an abuse of discretion is shown. *Howe* v. *Independence Co.*, 29 Cal. 72; *Merritt* v. *Putnam*, 7 Minn. 493 (Gil. 399); Freem. Judgm. § 106. This discretion, however, as was said in *Bailey* v. *Taaffe*, 29 Cal. 422, "is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve, and not to impede or defeat, the ends of substantial justice." The affidavit of Hyde shows that the location of the grantors of the real defendant of the mining claim in controversy was made before the location by the plaintiffs of the Almo Lode; that the defendant and its grantors have been in the actual possession of the ground in dispute ever since the location was made, and have expended in the development of the Michigan Lode more than $100 annually. This affidavit is not controverted by the plaintiffs, and shows a meritorious defense to plaintiffs' action. The affidavits of Dickson, Marshall and Royle show that Dickson's partner, Stone, had been absent from the Territory for more than a year, on account of ill health; that Marshall was in ill health, and unable to attend to any business, at the time the case was tried, and did not know that the case had been set for trial; that Royle was engaged in the

trial of a very important case, and did not know the case had been set for trial until after December 14, that Dickson was engaged in the trial of a very important case from December 7 to the 19th, which he could not abandon; that he learned on December 11 that the case had been set for trial on the 14th; that he spoke to Brown about the case, and asked him to attend to it, but Brown was disqualified by reason of having been an attorney for the plaintiffs, but suggested that a continuance might be obtained; and Dickson, believing that a continuance would be obtained, and being pressed with the trial of an important case, says in his affidavit that the fact that this case was set for hearing for the 14th of December "entirely escaped my attention." The district court considered it a case of "excusable neglect," and set the judgment aside, and we think there was no abuse of its discretion in so doing. Freem. Judgm. § 114. The order of the district court appealed from is affirmed.

ZANE, C. J., and MINER, J., concurred.